in his official capacity. We'll hear first from Mr. Flores on behalf of Defense Distributed. May it please the Court, Defense Distributed and the Second Amendment Foundation's motion for an injunction pending appeal should be granted because the Attorney General has had four years to come up with a real substantive response to the claims in this case and still can't do so. In this court he has no argument about our likelihood of success on the First Amendment claims in this case, no argument about the irreparable harm that is befalling my clients, no argument about the balance of equities that flows in our favor because of his incessant gamesmanship, and no argument about public interest. Can we address jurisdiction first? Yes, Your Honor. In this court or the court below? Both? Let's start with this. I believe I appreciate that distinction. Very good. We'll start here. This court's jurisdiction flows from 28 U.S.C. 1292 A.1. This court's jurisdiction attaches to a decision. The decision below is a decision that additionally... In other words, we always have jurisdiction to review the jurisdiction of the district court. Yes, Your Honor, and that is in addition to 1292 A.1. You have jurisdiction to determine that decision. Does the district court have jurisdiction? I'm sorry? Yes, it does, Your Honor. The reason the district court has jurisdiction is for the usual reasons. We have both a subject matter jurisdiction question and a personal jurisdiction question. The reason the district court has subject matter jurisdiction is because the plaintiffs here plead claims under the Constitution, under 1292 U.S.C. 1983, and the district court has personal jurisdiction for the reasons this court explained in Gray's Law. Your point is even if... I'm sorry. No, go ahead. Even if New Jersey, even if we were to purely hypothetically conclude that New Jersey is not a party for the reasons New Jersey states, your point is that's not a jurisdictional issue? Correct, Your Honor. Okay, so you win the battle but lose the war, essentially. I'm sorry? At the end of the day, that's not the result your client wants. I'm sorry? That's not the result your client wants. Your client wants both jurisdiction over New Jersey and party status of New Jersey. That's right, Your Honor. So if we may cut to the chase, how do you deal with language like footnote two of the, I'll call it the Bruck opinion? I mean, it seems to me that the Bruck opinion is premised on Red Barn, which is premised on the principle that until the case is returned, the case is in New Jersey, not in Texas. Your Honor, we deal with that in three ways. First, we look at the text of the mandate. The mandate has not one procedural solution but two. This is the fundamental flaw in the AG's position. It's that there are actually two problems to solve. Problem number one is the absence of claims against the AG in Texas. Problem number two is that there are extra claims against the AG in New Jersey. Now, the decision in Bruck gives two procedural solutions. To solve problem number one, the absence of claims in Texas, it issues the vacator. The vacator is crystal clear and it's unqualified. Problem two is we have extra claims. The vacator was issued as a result of an order of this court. That's right, Your Honor. So the footnote that the court refers to is talking about the case in New Jersey. So the question though is whether or not the district court could issue a vacator in a case that had already been transferred to the New Jersey district. Not quite, Your Honor. Remember that the district court, the Western District of Texas, has always had a case by defense distributed and sat against the State Department. In that case, the docket has the order that this court held was clearly erroneous and that this court told it to vacate. I'd be happy to defend the correctness of this court's decision in Bruck. But the case against the New Jersey Attorney General had been transferred to New Jersey, hadn't it? The claims had, Your Honor, but I want to make an important distinction here. So the claims had but the case hasn't. That's right, Your Honor. We give the court the Whittaker decision. You'll see the Whittaker decision that page, excuse me, in our brief, page 35. And Whittaker explains that when courts dispose of cases, they can do one of two things. They can dispose of the entire action or they can dispose of claims. And what happened here was a disposition of claims. The district court below took claims against the New Jersey Attorney General and sent them away. But Whittaker, which is unanswered by the other side, says that that leaves a plaintiff with an option. The plaintiff can amend their pleading to come back and try again. And that's what happened here. So the order that the Bruck panel, which I happen to have been on, issued, it vacated the transfer. And did you need the vacation of the transfer in order for you to say that you have I think so, Your Honor. That solves the problem in Texas. The vacator doesn't solve the problem of the extra case in New Jersey. But it gets you back to square one in the Texas because it puts you back before there was a transfer. Correct, Your Honor. And the vacator doesn't happen just at the end of the opinion. If I can point the court to what you're saying. But it seems to me saying two things. If you're saying before there was a transfer, something you're also saying, but there was no transfer. You're saying the case wasn't transferred. It was until the vacator happened. This is the black letter rule of vacators, just like when a district court issues summary judgment. But the vacator was issued by a court where the transfer had already been completed to New Jersey. Yes, Your Honor. The Western District of Texas has jurisdiction over its own order. This court held that in Bruck. Well, if that's true, then why did this court order the district court to request that the district court of New Jersey send the case back to Texas? Why do you have to ask them to send it back if you don't need to ask them to send it back because the district court in Texas still has jurisdiction to do what it wants to do with it? Explain that to me. Yes, Your Honor. I have two answers. One is that why Bruck did what it did doesn't matter. But I have an answer for you. And that is that there are two problems. There's both Your theory is essentially we have a cloned case, essentially. Yes, Your Honor. The court split the item. I think for what it's worth, conceptually, as an original matter, that is certainly a possible theory of what's going on. It'd be akin to the district court dismissing its original suit rather than transferring a new suit being filed in New Jersey and then this court reversing the division that our precedents provide for. And so show me something in Red Barn or in Bruck or anywhere in our court's precedents that suggests a cloning theory as opposed to a we have to wait for the New Jersey court to send it back theory. Your Honor, I'd be happy to do so, but I don't think we need to. The court crossed that bridge in Bruck. If the vacator doesn't mean what we say it There's quite a bit of language in Bruck that I could point to, but I'll just start with footnote two. Why would the panel say upon return of the case to the Western District, the court can then entertain a PI motion? Because the court there is talking about the case. That, I think, is in our favor. I think we understand that to say that when this case, the case before the Fifth Circuit, goes back down to the Western District of Texas, the court can entertain the motion. You don't mean a return of the case from New Jersey. You mean the case being returned to the case in Texas, us returning the case to the district court. Yes, Your Honor. That's precisely what I mean. That's the actor in that sentence, not the New Jersey. And getting New Jersey back, if you have a clone or you have an extra, is helpful to gathering all the pieces. I mean, you could think of it like horcruxes or something instead of split clothes, however you want to think about it. You want to get all the pieces back, even if you don't need to have all the pieces back so you don't have collateral litigation. Correct. The existence of that extra case in New Jersey is not a jurisdictional problem. It's a claims processing problem. It's something we deal with, with things like the first file rule, stays, transfers, those sorts of issues. And we've litigated that before in this litigation, and we'll be happy to do so again. Okay, so your theory of footnote two is it might as well have just said on remand, the district court can immediately entertain a motion for PI. Correct, Your Honor. And it's just sheer happenstance that it used the word upon return of the case, which is language that matches the mandate language, requesting return from the district of New Jersey. If it did mean upon return of the case, how does your answer differ? Assuming, arguendo, that the panel meant upon return from New Jersey. Our answer is that the panel in Bruck assumed, as I think we did, that the court in New Jersey would do the right thing and send the case back immediately. We made the additional procedural reasons as a plan B. Yeah, let's presuppose that that's right, that it is a horrible act of whatever the lack of comedy is, a defiance of comedy, that the district court in New Jersey is refusing to return. But let's further presuppose that the Third Circuit unanimously on bonk affirms and the Supreme Court unanimously or denies or what have you. I take it your view is what in the district court of Texas? Our view then is that we either have our vacator theory here or imagine this, Your Honor, we could just start a brand new lawsuit. Right, we have two parallel cases. Correct. That's the cloning theory. And again, conceptually that's possible. I'm just struggling to find the precedent that supports it. We think Bruck crosses that bridge already. I don't understand my friends on the other side to have a case in opposition. This is a sui generis case. I think it is a case on its own. Well, but you're aware that Red Barn and other cases, whatever the Southwestern, there's a strong concern that once we've, once a district court is transferred, it's out of our circuit. We really don't have any authority to do anything. And even if we do, we're supposed to reserve this for the most extreme case. So you get the court crossed that bridge already. That's the exact discussion from Bruck. Bruck says exactly what the court's concern is now. Well, but why wait for return of the case? Just start litigating right now. That's what we're doing. That's why we're not waiting for the return of the case. That's precisely. Well, that's not how, I mean, you did not literally do that. You were hopeful that New Jersey would play ball, the court of New Jersey that is. Sure. And to your shock and perhaps to mine as well, they're not playing ball. And only now you're saying, oh, now we have this theory. I think the elegant solution would have been for re-transfer to have occurred. That would have solved both problems. And I think my clients were entitled to take that as the efficient solution and wait. And if step one didn't work to take. Well, it's only a problem if you're not the attorney general of New Jersey. If I'm the attorney general of New Jersey, I'd probably like to be in New Jersey. That's probably the reason you like to be in Texas. Yes, attorney general of New Jersey needs to be in Texas when the attorney general of Texas is trying to enforce its laws about first amendment in Texas or issue, to try to restrain prior restraint of speech within the state of Texas. We said that twice, haven't we? Correct your honor. If we lose this appeal, which we shouldn't, and we have to start a brand new case in Texas, there is nothing to stop us. Personal jurisdiction is established. Venue is established, not just in the Western district of Texas, but this exact case. But the way to do that isn't to start a new case. It's to amend our complaint. So either the vacator did what was necessary automatically or our alternative argument. We amend the complaint. His complaint. Yes. Add a new defendant called the New Jersey. Yes. So we did both below to bootstrap it and instead of confronting those issues on the merits to decide, did we add the party correctly? So pardon my ignorance. How do first to file, if you know, how do first to file rules govern in that situation where this suit is the first to file? Correct. But I guess in theory, New Jersey wasn't added until tomorrow. So we have a litany of answers. Answer number one is that the first trial rule is a rule of abstention. And when we look at rules of abstention, we decide who really was the first to file. And so we think under the first filed rule, even though we have to do this technical gotcha of refiling the court, we consider this first case. That's one answer. The second answer is that when we have first file disputes and we're deciding which case goes first, we don't apply the first filed rule. If there is irreparable harm occurring, we cited that every time we fought this fight. And it's absolutely occurring here before you run out of time. What you really want is an expedited appeal so that we can with all these issues together. Should we just carry these motions with the case, except obviously grant the motion to expedite? Your Honor, we would like some court anywhere to rule on our request for injunctive relief. And so, yeah, that's our backup. We'd happy to carry the jurisdictional part with the case. Yeah, we accept those. It seems to me that whether it's jurisdiction, appellate jurisdiction, district court jurisdiction, claims processing, it's, your client just wants relief. And I understand that claim. There's no need to parse this out into separate proceedings. Let's just get this proceeded as quickly as possible. What's the state of the, what's the situation right now? In New Jersey, Your Honor? Well, in New Jersey, has the reconsideration? There is a motion pending before the district court, our last gasp effort to get the court to do the right thing. The case in New Jersey right now is exactly the same as the case here. We've told the court repeatedly, the right thing to do is to send it back. And we're waiting on the district court. Once that decision comes, then if necessary, we'll take it up and resolve those extra claims and try to get them settled. So we don't have any estimate of when that will happen? We don't, Your Honor. The local rules there impose no decision timeline. And so we're waiting. We've asked for expedited treatment in the district of New Jersey, precisely because we need this injunction rule. Are you aware of this happening where a court would refuse a circuit court's request that, you know, by the, just made through the district court to make sure that this got back to the place where it's actually taking place? No, Your Honor. We understand this procedural posture to be unprecedented, and we think that's a point in our favor. This is exactly why the court's equitable power exists, because sometimes there are very procedurally odd cases that require a balancing of equities in the meantime, and there is nothing except this technicality on the other side. What is the situation with the claims against the State Department? Are those poised to move forward? Why aren't those moving forward? What's going on? Those are moving forward, Your Honor. In the Western District of Texas, there are pending Rule 12 motions. The State Department has moved to dismiss those claims, and we have responded. Once those are resolved, we accept them to proceed. There's no need for immediate injunctive relief against the State Department, because at the moment, the State Department has not been able to enforce prospective claims against Defense Distributed. We have retrospective claims there, and so those matter, but at the moment, there's no injunction proceeding. And I'm sorry, is there any worry that there's, from your client's perspective, of mootness or something? Because we talked at the last hearing that some of the things are not the latest technology in this area. Is this, is there any chance that this is moot, and we, this isn't, that those particular plans and things are not at issue anymore, because the tech, it's moot beyond that? No, Your Honor. The case is not moot, and the prevalence of 3D files and computer files, the information that we're talking about here, that does become more and more prevalent on the Internet, and that makes our case stronger. That shows that their efforts at censorship are ineffective to achieve any of their goals. They're really just on a witch hunt for our clients, which the First Amendment prohibits. Because it's all over the place now. Correct, Your Honor. Not on the dark web or something, but . . . But to be clear, though, my clients have not been able to engage in the speech they wish the entire time. That's why we've been asking for an injunction for four years. Thank you. Oh, I'm sorry. Judge Graves has another question. On this do the right thing thing, I'm assuming there are some things that a judge looks at in making a determination about whether or not to grant a request to . . . because it's a request, not an order. It's a request to transfer a case. There's some things that a judge looks at in making that determination, right? Yes, Your Honor, there could be. What are? So, for example, if the circumstances of the case had changed between the time of the initial decision in Texas and the time in New Jersey, we think a court could consider that. There are no such changes here. And otherwise, we think the discretion is, in fact, very, very narrow for the reasons that we argue there, because the decision this court made is law of the case and because it's compelling on its own terms. So we think there is some room in some cases, but there's no room here, Your Honor. If we read the decision that came from the District of New Jersey, right, because the procedural postures are exactly the same now, the only reason that court is not giving the case back is because it thinks this court got it wrong in the last appeal, and that's just not a valid reason. Thank you. You've saved time for rebuttal, counsel. We'll now hear from Mr. Feigenbaum. Is that correct? Mr. Feigenbaum. Feigenbaum. I'm so sorry. Fine, Your Honor. I'm sorry to cut you off just as you're starting, but can you answer Judge Elrod's question, because I'm curious about it as well. The question being, have you ever heard of a district court refusing a request for transfer in this act of comedy? No, Your Honor, but we're not aware of any other request like this. So the denominator is this case. We don't know of any other case in which there's... You're saying this could be the first time that we've had this weird transfer request? To our knowledge. This is, to our knowledge, the first time where this exact posture arose, which was a direction from a circuit to the back. So I don't have examples. Grandin will deny it. Fair enough. I assume you would agree that had the district court in Texas never transferred in the first place, we wouldn't be here. Not that we wouldn't be here, but we would not have this New Jersey federal court issue. Yes, Your Honor. So what is your response to the concern that by allowing this to move forward as you would want in New Jersey, it's really a threat to the hierarchy of our judiciary? I mean, this court has obviously seen fit to say that the district court got it wrong on the transfer. It was two to one. Judge Higginson wrote a powerful dissent. We can have that debate if we wanted to, but obviously this panel has no authority whatsoever to disrupt it. We have to take that opinion as if it came from the highest authority possible, which it is. So given that, it appears that district courts are except for the last sentence. I'm not relitigating anything in Bruck. I'm not trying to disagree with the transfer or the request that it be returned. Our submission is that the entirety of Bruck disposes of what's available to this panel in this case. So Bruck both says what it believes the district court should have done in response. There's no question, but it also lays out what it believes this court's authority is vis-a-vis the district of New Jersey. Appellants have options if they believe that what the district of New Jersey has done is unacceptable. When the district of New Jersey takes an action that violates principles of comedy or any other legal rule, the answer is seek reconsideration, which they are doing right now. And they've actually made some changes to the procedures of the case. They dropped a second New Jersey case in the hopes of giving a little breath to reconsideration. That was the case that had originally been consolidated with in New Jersey. So they took some steps, I think, to try to give a little life to reconsideration. You're saying hopefully the district court- Seek mandamus at the third circuit. And if that fails, seek review in SCOTUS. Exactly the path that you identified. Fair enough, but- I'm trying to keep the case there. Exactly. You're not exactly playing along here. This is not that you're saying, oh, we've acquiesced to this court. You actually are encouraging the court to defy comedy, aren't you? Obviously, I'll quibble with defying comedy, but we are not- Do you support the request to return the case to Texas? We absolutely oppose the request to return. Right. Well, we oppose- What you just said earlier- Yes. The request happened. This court ordered the request. The Texas district court did exactly what it was ordered to do by this court. We didn't tell the Texas district court not to. It was bound by that request, very clearly law of the case, for the purposes of the Texas district court. But the case that's in New Jersey, our belief was, is not bound by what this court said and has to operate on jurisdictional rules. We think comedy did not dictate that result. We think law of the case definitely didn't dictate that result because it was a request, and we thought it should be denied. We obviously have profound disagreements with what's happened in this case. There's no question about that. But our submission is that the entirety of Bruck, properly understood, particularly the mandate and footnote two, when understood in light of the language of the mandate, makes very clear what the available next steps are. Let's presuppose a hypothetical. I'm not making any comment on Judge Pittman in this case, just a hypothetical, where district court, in open defiance of established precedent on transfer, decides to transfer anyway to another circuit. I take it your view is there's nothing this circuit can do about it. So I don't think that's, I think there's things on the front end and on the back end that circuits can do. So many circuits and some local districts and some districts in their local rules have on the front end mandates that transfers can't be effectuated for x amount of time so that the circuit has plenary authority to review those transfers, including in this circuit on mandamus. Because the whole point of those local rules or those circuit precedents is that once it's effectuated, the jurisdictional status of the case changes, which is the sort of twist in the case that Bruck identified in the last iteration of this lawsuit. And so on the front end, there's ways to deal with that. But they could have requested a stay. So that's the on the back end. So the on the back end is an ability to request a stay. What happened in this case was appellants did find— This is a lack of diligence argument. You're saying defense— It's not exactly a lack of diligence for the request. I'm not saying that diligence bars what the Bruck opinion did in this case, which was make a request. Red Barn had made a point— We litigated that in the last go-round at length, whether or not they were diligent and entitled to the relief. And we addressed that. And so they were not—they did not show a lack of diligence. I don't want to do double negative. No, no, of course— And when I said request a stay, I'm talking about they could have requested a stay of the transfer order. So am I, Your Honor. So we litigated that as well last time. Yes, and this court was very clear. That wasn't a prudential reason not to order the case to be returned. But it was something that hadn't happened in time for effectuation. And so this court in Bruck and in reliance on Red Barn specifically said it was beyond this court's power to do more than order the Texas District Court to ask for the case to be returned. So I agree with everything you're saying, Judge Elrod, that diligence is not a prudential reason not to ask for it back. We lost every merits argument that we made in Bruck, but we won the point about what was jurisdictionally available to the court. The appellants in that case had simply brought an appeal with alternative being mandamus. They had wanted to proceed with this case, exactly like the petitioners— How is it appropriate as an officer of this court to argue before someone else that they defy this court the meaning of incomity? How is that appropriate when the actual way to deal with that would be through en banc and or cert? So that wasn't our understanding of comity in this case, Your Honor. And I realize we have some real merits disagreements in this case. I'm not trying to sugarcoat that. But our understanding of what the Fifth Circuit said was we're going to order the request to go back. That's not binding on what the parties have to believe DNJ needs to do in response to that. And we, in representation of our client, who continues to believe the case should be in New Jersey, went to DNJ and said, this is our view of what should happen in this case. I mean, state attorneys general all the time are arguing personal jurisdiction, transfer, a range of doctrines to have cases against the enforcement of their laws heard in their district. So I didn't mean to give a front to the court in making these arguments, but these are our views of where the still available to us. Is the issue of jurisdiction here one of district court jurisdiction or appellate jurisdiction? So I think it's easiest to think of it first as district court jurisdiction, which is the district court did not have party status over us. We were not a party. Now, there are certain you, of course, agree that we have the jurisdiction to review the district court's jurisdiction. A hundred percent. You have the power to decide if we have party status. Our submission is if we don't have party status, there's no power to enjoin us from enforcing our statute. I take it then you have no objection to carrying this with the case. I mean, these are all at the end of the day, it's one big issue. Is there any reason why this motions panel should decide it as opposed to a merits panel? I don't know that this motions panel has to decide it. I think we have dispositive arguments just like appellants have dispositive arguments. If this court concludes carrying with the case is more judicially efficient, that's for the court to decide. Our preference obviously is for the case to be dismissed and the injunction pending appeal to be denied. And I do think that the arguments that we've submitted to this panel are ultimately dispositive here. I do think that the two problems with Vacater are some that this court has, I think, teed out in appellant's presentation this morning. The first is what I've called the Vacater did not do what they say. And then the second is the Vacater could not have done what they say. The did not do relies primarily on the language of Red Barn and on the language of BRUH, in particular, the mandate on page 437 and footnote 2. I do think the use of return in both the mandate and in footnote 2 make clear what this court was doing upon return of the case from New Jersey. That's when we can reconsolidate with the State Chairman. What if you were to say it assumed, we need to take up the first argument, though, that it meant return to the other court. But let's put that to one side for a minute. Return from New Jersey, you assume that it would be returned from New Jersey, but it didn't actually adjudicate what happens if New Jersey doesn't give it back. That it was assuming that everything would go expeditiously and it would be a little package all tied up with all the claims together in one place, particularly now that the other New Jersey claims are gone. So it would all be in one place. And that's preferable. I think we would all agree as lawyers, it's preferable to have everything in one place. But if it's not, it wasn't opining on what was still left in the other court. I think that's where I ultimately diverge. So I think that the court, and this might be my could not argument, although I think it's a little bit my did not argument still, but at least the could not argument is that there is no power to clone a case. I'll steal Judge Ho's phrase. There's no power to clone a case. Why not? That's a separate point from that's not the law. If there were no precedents on the books, if we could rewrite Bruck, I know we can't, but if we could, there's a world in which instead of it would be that the case is restored in district court and a request made to the district court in New Jersey to stand down and to respect the first to file rule. I understand fully that that's not how Bruck was written. I'm not saying it was. I think in my opinion, a misreading of what the Bruck court said. But why couldn't it have been that way? So let me just take a quick run to say it's not just Bruck. It's also Redburn. It's also Southwest. It's the case. Fair enough. That's what I'm saying. Ab initio. If we were to rewrite, if we were to start from the beginning, we should go one bonk to make that clear. So I think two points on that. The first is, this is sort of my one complaint, one lawsuit argument. We're not aware in any other context of the filing of one complaint being able to produce two identical or different lawsuits. We don't clone. We don't clone is what you're saying. Correct. Court doesn't clone, parties refile or file again. That's exactly right. So why can't they file an amended complaint right now? So I think that like a brand new complaint altogether. So amend in this court to add onto their other. It doesn't have to be a brand new lawsuit with another number on it. Add it to the ongoing lawsuit right now. So two quick points on that. The first is because that's not what happened yet. The answer to this appeal is still to dismiss it and to deny the injunction because we don't have party status sitting where we are right now. If they refile and if they reserve us, then I agree the party status objection goes away. And then we get into the colloquies we were having earlier this morning about the second filed rule and the other limitations that exist to prohibit that sort of action. And you're going to turn around and argue it's second filed. So I would argue that it's second filed. It would be second filed when it was first. Okay. Let me take a very high level run at that. And if I don't persuade you, I agree. It's all speculative and we don't have to decide right now, but I'll take a good faith run at it. So first, I want to give an example that I think shows this problem. States do face litigation in other districts all the time and they often seek transfer. One of the risks of what would happen here is this jurisdictional argument has legs beyond this case. I understand this case is weird. I know that we've lived this case for some time. But the jurisdictional argument goes beyond this case. The jurisdictional argument would mean that if a case has been transferred away from the transferor and someone, the plaintiff's unhappy with that and refiles in a district court seeking a different judge who's perhaps more hostile to transfer or just more favorable on the case, that gives them a chance to overcome the second filed rule on the basis that the transfer was outrageously wrong. And that produces profound problems, private litigation, litigation against states in dealing with the second filed rule. So I don't think it is so easily overcome, but regardless, as you said, Your Honor, that's not the case we have in front of us right now. We don't have party status. So this court doesn't have to speculate on that. But I at least wanted to show why I think it might have problems. OK. Let's go back. We're still not, we didn't ever do the, what we meant was actually sent back to the district court. We just, instead of saying remand, we said send back. But we used a slightly different language. So on court. Because you're trying to figure out what was in the panel's head. It's always a dangerous thing to talk to a panelist about what's in the panel's head. But at least at a high level, page 437 is, I think, very clear about reconsolidation. Page 437 says vacate, then request the return. Then I think it's after return even it says. Then reconsolidate with the case against the State Department. So 437 is very clear. Even after vacatur, it thinks there's a case against the State Department. Not a case against the State Department and a cloned case. Let's say I'm sympathetic to that point. Nevertheless, I assume you would at least acknowledge that the panel assumed that there would be reciprocal comedy by the District of New Jersey. So all I'll go with is the word comedy. I agree with the assumption that the case would get sent back. The panel thought. Well, but I mean, do you have, you have a literal undoing of the transfer order without which you fully and rightly acknowledge the District of New Jersey would not exist for purposes of this case. What possible claim does the District Court in New Jersey have over this case? So the District Court of New Jersey in particular focused on the fact that it consolidated its action with an action that was already pending. That's essentially what I think of as a diligence argument. Am I wrong to think of it as? I didn't think of it exactly. You're saying they waited too long. They could have opposed. I didn't think of it exactly as diligence the way DNJ. They could have opposed consolidation rather than conceded to it. They could have moved quickly. You're saying they failed to. That's fair. Although that's not the diligence fight that we had in front of the panel. No, no, I'm just making a point that you're saying, oh, too bad, so sad. You waited too long in New Jersey. That's a part of it and also that consolidation is an action. How long did they wait though? I mean, how many days are we talking? I know you got five minutes left. One of my questions is, I want to understand why request doesn't mean request. Apparently when a request comes from a District Court in the Fifth Circuit, it's an order. I just don't understand how it is a panel can assume that a request will be granted I guess because there's a body of law that says all requests get . . . I just don't understand how if it's . . . I don't understand why they call it a request if it's not. Apparently, it's not. The panel assumed that it wasn't a request. It was a demand, a command, an order. I mean, because we're still talking about it like New Jersey had . . . There was only one choice for New Jersey. That's not a request. Let me take both questions, I think, maybe together or at least one than the other. On the request question, that is the heart of our comedy argument in DNJ. It bases heavily on what this Court said in both Bruck and Red Barn, which was, we couldn't order DNJ to do something. That would be inappropriate. It doesn't sit in our jurisdiction. That would be an offense to comedy. We can order our Court to request, but if a request really became mandatory, that would be the original . . . There is a middle ground here. It's a request simply respecting the geographic limits of our Court. That seems like an obvious reason why it's the word request. The question is, don't we want states in the Union to be at least as reciprocal as we expect courts in foreign countries to respect U.S. courts? In other words, we could play this game, but it's going to devolve into balkanization, which is the whole point of comedy. I take the point. I think these are arguments that we hear from the other side in front of the Third Circuit if reconsideration is denied, maybe even in SCOTUS if the Third Circuit sides with . . . But again, you're opposing this, so . . . We are opposing it. Our view of comedy . . . Your arguments, not those . . . Of course. No, no, I'm not trying to hide. I'm just making clear there are pathways to raise this that aren't cloning a case in the Western District of Texas. Our position has always been, and it was in New Jersey, that because a request can't be mandatory, because that itself would be a significant offense to comedy, it would be a huge problem if DNJ had to perceive if a Fifth Circuit action is mandatory, then it should be given respect but not binding. And if the DNJ court thought it was sufficiently incorrect to deviate from it, then it should. And we had the view, of course, that that was sufficiently incorrect that it . . . And the only argument that I've heard you . . . Because I want to make sure I've heard it. The only argument I've heard from you about why this case belongs in New Jersey is because they took too long. It's not quite just that they took too long. There's a whole range of arguments, many of which we lost in Bruck. So I'm not trying to convince the panel that what Bruck said on the merits of the transfer is wrong, but we have a panoply of arguments . . . But that's a telling . . . I appreciate your statement there. I think it's a telling statement, because at the end of the day, this court has made certain decisions. One can quibble or agree with it. But the point is, they've been made, and now a district court in New Jersey, under your support, should defy that, or relitigate it at least. Should turn down the request. That's exactly right. Or reasons that this court has rejected. You have two reasons. One is, the defense distributed took too long. They really should have blocked consolidation and moved to bring the case back sooner rather than later. Okay. Fine. That's a diligence argument. I accept that. The second argument is, this court got it wrong, essentially. Any other arguments besides those? Those are the two primary arguments that we're making to the district court. Did you get your question answered, Judge Grace? I don't know. Okay. Boy, he . . . Okay. I'm sorry, Your Honor. I can take . . . No, no, no. No, no. Go right ahead. I'm fine. I want to talk about Red Barn a little bit. I don't understand Red Barn to prohibit the idea that the case can, once it's been vacated, or vacature, as you say in your part of the country, once vacature or vacature has occurred, that the case doesn't exist anymore, that the original case is back. I don't understand Red Barn to prohibit that because there is not the vacature in Red Barn that would have allowed it to be as if it were before. I don't see Red Barn as a hindrance to the idea that it doesn't matter what the New Jersey Court does. There is the case back in its original form already here and no motion to amend needs to be filed because the case is back as it was. Apart from, if you think, putting aside whether you think some language and opinion would tend to cast doubt on that. Let's put that to one side. So I don't think vacater can achieve that here, Your Honor, and I'll use the pronunciation in this court. You know, use whatever pronunciation. It's totally fine. So for vacater, I do think that it can't achieve the status quo ante in this case because the status quo ante was one case. I mean, I don't think there's any dispute about that. It was one case in the Western District of Texas. The choices before this court are one case with the law of the case implications taken away with a hopeful return from New Jersey or two cases. Neither is the status quo ante. I'm happy to continue answering questions. I guess I don't really understand why it can't be that the case came back to life once the thing that killed it ended. I mean, you know, it's metaphysical at some level that it was dead and then it was, you know, when you took away the thing that got rid of it, it's back, springs into life again. So I feel the abstractions, but I think the way to most ground this is that one complaint produces one litigation. So you have one lawsuit, it's filed on one complaint. If we're using the revival theory, there's only been one filing of one complaint. And so you have that case. It has been moved to New Jersey. That part, I think, is all common ground so far. No, but why is that? Why doesn't the case exist in some claims in New Jersey, and that was the Learned District Court erred, in our view, in taking it to New Jersey, we've said that, but those claims went there and there are some claims in New Jersey, but the original claims are resurrected for a lack of, I don't mean any kind of religious implication, but brought back into being. Why isn't that, why can't that happen? And so you have split claims, and that's why I thought of it as kind of like horcruxes or splitting an atom or something. It's still there. The beginning and the original thing was in Texas, and it's back to life. Why doesn't that work? And I don't think, what does Red Barn say that would keep that from happening? So Red Barn said there were no, the Texas court lost its ability to make appealable orders, and the path on my endamus, which was tied to the All Writs Acts in Aid of Jurisdiction Authority, something we think is lacking here, would be to order that court to ask for it back, because that court still sits within its jurisdiction. But there's nothing in Red Barn that would allow for, I don't think it's splitting, I think it's genuinely cloning, because it would actually be the exact same two sets I accept your one case, one filing point. So I want to follow up on Judge Arwaj's line of inquiry, which is sort of consistent with my previous line of questioning, which is this. Conceptually, putting aside our precedent, conceptually, you could have a different rule where once we have reversed the district court's transfer order, that is an act of revival. Okay. Yes, we have no jurisdiction over the New Jersey court. So the act of comedy is now request that the district court in New Jersey stand down, consistent with first to file rules. And, you know, we don't have any authority over New Jersey. Certainly the district court in Texas does not have any authority. There could be lack of comedy, or however well you want to describe it, to preceding claims. But what conceptually, as an original matter, would prevent us from adopting a revival theory, as opposed to a non-revival ask for it back theory? So this is an issue we briefed in a little more detail in Broxham. We're going to talk about a case we cited there in more detail. I believe it's the Drabnick case from the Second Circuit by Judge Hand. And it talks about how you have one filed case, and that case goes somewhere. And so you think of one circuit with one jurisdiction over one case. And so you can't— It's that loss of jurisdiction theory, is that it? It's the loss of jurisdiction. You have to ask for it back, because we don't have it. It's the full loss— And I use vacator, so there's one more way to pronounce it to add to your vocabulary. But the court that issued the vacator didn't have jurisdiction anymore over the case, because the case had been transferred. So I understand the revival of claims, but you can't revive a claim without having jurisdiction to revive it. And this case had been transferred when that order was issued. So let me— That from— Maybe I'm oversimplifying. No, let me take that one extra sentence to say what it would mean, the consequences of that would mean that any transferor court could vacate its transfer on reconsideration if it thinks that the transferee has done something inappropriate with the case, and then you would revive the claims. You'd have two lawsuits again on one complaint. Now, there may be facts that are different between this case and that case, but conceptually as a jurisdictional matter, it's no different. The transferor court would always have the power to vacate its own transfer on reconsideration, potentially much later in the case, and simply proceed with the case again had it not been transferred. That is entirely opposite of how Section 1404 normally works. So there's my initiation. There's one lawsuit, one complaint initiation theory. But if you look at cases like Flight, the Eighth Circuit case that we cite on Section 1404, you have one transfer. It's plenary. It's complete. It's a loss of jurisdiction. So as an original matter, that is how both initiation of cases work and one plenary transfer of case work. So I think Red Barn got it right. I think Brough got it right. All of the jurisdictional limits make sense and cohere, and they all tell one story. And that's why there is no circuit in this country that does this vacater thing that takes the case back on its terms within the circuit without any request. Red Barn specifically identified the furthest that any circuit would go was this request. And it said, we'll do that too, although not in that case. And Brough said yes in this case because of the extreme facts. And in terms of the narrative I suggested earlier that what if you have a district court that just willfully defies circuit precedent and transfers when it shouldn't, essentially there's nothing we can do about it? I don't think there's nothing you can do about it. I think that there's the front-end solution. I think there's the back-end solution. Remind me of the front-end because I confess I really didn't understand the front-end solution. Sorry. I can play the audio if you don't mind. A number of circuits and districts have supervisory rules. There's a DC circuit on Bonk case called Starnes from the 70s that I think explains this best. They say no transfer can be effectuated. I think they say 12 days, but don't quote me on that. Because we need to maintain our jurisdiction to review that transfer. It gives you time to run to the court of appeals. And that's before it. But we don't have that kind of rule. We trust our district courts. You're saying it's our fault? You're saying we need to adopt that rule if we don't trust our district courts? I think it would be a helpful rule if this court doesn't trust its district courts. And some district courts have this rule. Is it a rule? It's a DC circuit rule as opposed to precedent? I don't remember if it's a current DC circuit rule. It was an en banc decision. The District of Connecticut has a local rule doing this, I'm sure of. That's somewhere between 10 and 15 days. I just want to point out that I know this time I didn't get an answer to my last question. I did not. I'm so sorry. I was asked earlier. It sure was my fault for not answering my question. I'm so sorry, Your Honor. Don't worry about it. What's your question? Go ahead. Time's up. I'm done. I'm sorry, Judge Graves. No, I'm happy to answer the question. I'm done. You sure? Yeah. Okay. Is it still the AG's position that these items can't be published in Texas without the threat of prosecution? It has always been our position that it's to a person in New Jersey. That's in the language of the statute itself in 39-9. The last time we had this discussion about where it could be, that was before the statute, when we talked about personal jurisdiction at the pleading stage. And even then, I contested that the facts would not bear that out. We've never had the factual development on that question. Appellants have not sought a PI in New Jersey where we would have to deal with that factual question immediately, because if they seek a PI in New Jersey, we have to deal with it on the merits and the equities. There's no question about that. But the statute which was passed after that is expressed only to a person in New Jersey. So is the case moot? No, Your Honor. We've never set the case as moot on that basis. I'm not suggesting that. Thank you. Thank you, Your Honors. Mr. Flores, you've saved some time for rebuttal. May it please the Court. I'll try to make six points. That sounds aggressive, but I think I can get there. We did seek conjunctive relief in the Third Circuit. We did it when we were in the first appeal, when we had lost personal jurisdiction in the District Court, came to the Fifth Circuit, and we were fighting personal jurisdiction. There was no injunction request pending in Texas then. We went to the Third Circuit. We said, please issue an injunction. And the Third Circuit, at their behest, said, no, we will not rule on the injunction because the courts of Texas are supposed to rule on that. And yet, here we are. That's number one. Number two, did Bruck mean to vacate? It did. I want to point the Court to the last sentence in the second paragraph of the opinion. The last sentence in the second paragraph of the opinion says that the Court is both directing retransfer, quote, and ordering other relief in accordance herewith. The other relief that the Court ordered is the vacater. So that's an extra textual reason that we know Bruck meant to issue the vacater. But that doesn't matter. This is my third point, because the vacater itself is crystal clear. We have given every authority under the sun for the proposition that there are no half-hearted, second-class citizen vacators. The vacater here is as full and complete as it can get. He concedes, in the last filing they have on page five, that the vacater did something. Because, of course, they have to concede that the vacater did something. That is the crack in the dam that blows the whole thing open. Well, but it means nullify the order. I get the vacater theory. It's nullifying, acting as if you're in the world before. But surely that includes the implicit issue that you're going back to the status quo ante to the maximum extent available under jurisdiction. And the other side is saying, that's the problem. Jurisdictions have transferred. There's no time delay rule here like there are in other circuits. Correct. We've lost jurisdiction. We have an answer to that, Your Honor. The answer is that there are two layers of analysis. What did the vacater do? And then is there some jurisdictional limitation? So we know that on the vacater level of analysis, the vacater was complete. Then there's a question of, is there some jurisdictional limit? And the critical point is that to get all of the relief we want here, all that matters is what happens in Texas. We're asking this court to reverse the decision in Texas. We're asking this court to enjoin parties that are parties to this appeal in Texas. We are not asking this court to snatch back the case in New Jersey. So that jurisdictional limitation is not at issue here. The vacater affected only the action in Texas and the comedy result that, Your Honor, I think hypothesized, which is that we have two actions and there is now a new comedy concern. What to do is exactly how it plays out. The comedy is the solution on the back end there. Have you filed a complaint adding them as a party? I'm sorry? Have you filed a new complaint or an amended complaint adding them as a party? In the Western District of Texas? No. Below, we said, please deem the existing second amended complaint our new complaint. And that's one of my six. I only have one left. The reason we know that's the proper thing to do, to file a rule, a motion to amend. Because that might be the solution, is do that. You will, it sounds like we will have a first to file debate, but you will have an important argument in your quiver that you should be treated as first to file due to all this craziness in this case. We did that, Your Honor. You've already done that? Leave to amend under Rule 15. And you know that's proper for two reasons. Number one, you know that's proper because of the authorities we've given you in the brief that say Rule 15 is the way to do this. And you know it because they do it all the time. All the time. The New Jersey Attorney General wants to inject themselves into an existing case. And when they do, they do exactly what we did. They file a motion to add themselves as a party. They did it in this circuit in United States versus Texas. They filed a motion to intervene and served it under Rule 5, just like we did. That makes me have a question. If indeed that the district court should grant your motion for leave, I'm not saying it should or not, assuming it should, why wouldn't the correct thing for us to do is say, go district court, you do have jurisdiction, decide straight up whether they're entitled to an injunction. Don't, instead of us ruling on an injunction. Oh, that is the ultimate relief we ask, right? The court should either give us the lesser form of relief or the greater form of relief. The least relief we ask for in the main appeal is a decision that says, district court is reversed. District court, you do have jurisdiction to decide either the revival argument or the refiling argument. In district court, you must consider the motion for a preliminary injunction. That's the lesser form of relief. Or you must consider the motion to amend and rule on that. And then if. Exactly. Then in the regular course or promptly rule on the. Exactly. So that's the lesser form of relief. We also say that on this record, the case is ripe for rendition of the preliminary injunction because he had a chance to make all of these arguments and chose not to make those arguments. I want to give you a chance. Go ahead. Very briefly. I want to give it, you had said earlier that the district court in New Jersey, their at least current denial, I know it's on reconsideration, their denial of the request you said was unprecedented. New Jersey here says that, well, it's unprecedented in the sense of where that we've never had any data points. Is that your view as well? That there, it's unprecedented in both directions, essentially. Nobody's ever denied, but nobody's ever granted either. Because this just never happens. That's right, Your Honor. I have maybe two final things to say in about 20 seconds. Is that if this. You're saying literally there's never been a request under Red Barn. That's right. Your knowledge. Yes. Mr. Flores, I think your time has expired. Thank you so much. We have your argument. We appreciate the fine arguments on both sides. Very helpful to the court.  The case is submitted.